Gary K. Dubcoff (SBN 168089)
2370 Market Street, #461
San Francisco, CA 94114
Telephone: (415) 934-8800
Facsimile: (415) 934-8800
E-mail: dubcoff@sbcglobal.net

Counsel for Defendant
MOHAMMAD YOUSUF CHAUDHRY

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MOHAMMAD YOUSUF CHAUDHRY,<br><br>Defendant. | Case No. CR 03-40210 CRB<br><br>**DEFENDANT'S REPLY RE HIS REQUEST FOR PERMISSION TO TRAVEL** |

Defendant Mohammad Yousuf Chaudhry (hereinafter "defendant" or "Chaudhry") hereby replies to the government's opposition (doc. 289; hereinafter "Opp.") to his request for permission to travel (doc. 287). The government, in greatest part, merely repeats the arguments it previously made to Chaudhry's earlier travel requests, all of which were necessarily rejected when Judge Breyer granted the requests. Defendant will repeat and update his earlier replies to those arguments.

*First*, with respect to the government's point that Chaudhry now has a greater incentive to flee given his conviction and potential sentence, the fact of the matter is that he would only have a greater incentive to flee now than he did pretrial if there were currently a greater chance of his being incarcerated than there was pretrial. All other things being equal, it seems safe to opine that a defendant charged with serious felonies

does indeed have a greater incentive to flee following an adverse jury verdict, but all other things are not equal in this case. Chaudhry's incompetency has been established, along with the other facts (*i.e.*, he is no danger to others, and there is no reasonable likelihood of his being restored to competency) that make his incarceration *more* unlikely now than pretrial. The government experts who examined him found that the mental illness from which he suffers has an organic, vascular etiology, revealed by brain imaging studies, which is "unamenable to medication treatment." In light of the experts' findings, the government has absolutely no basis to believe that re-evaluations will lead to a different conclusion regarding those facts than have already been reached by every expert (and there have been several) to have examined Chaudhry.

Moreover, Chaudhry had the selfsame incentive to flee posited by the government during his last two post-conviction, court-approved trips to Pakistan, yet he returned each time.

*Second*, with respect to the government's professed belief that Chaudhry needs "long-term care and treatment for his mental illness" (Opp. at 1), the government does not offer, and has never offered, any factual basis for that belief. Again looking to the government's *own* experts, they found that Chaudhry was not "gravely disabled" and that he "did not require psychotropic medication." Judge Breyer has previously taken note that there is not even a hint in the expert's reports that he needed care or treatment in an institution. Regardless, in the current procedural posture of the case, it is not the government's role to be making the decisions that his family is currently making as to what care or treatment is in Chaudhry's best interests. *See, e.g., United States v. Lapi,* 458 F.3d 555, 563 (7th Cir. 2006) (noting narrowness of federal statutory scheme, which "reflects the general principle that care of insane persons is essentially the function of the several states") (citations and internal quotation marks omitted). *The family* believes that Pakistan provides him a benign environment.

*Third*, with respect to the government's point that "Chaudhry's mental state is still under evaluation" (Opp. at 3), the short answer is: no it isn't. Nothing is pending. The

mere fact that the government may, at some unspecified time in the future, seek to compel a re-evaluation of his competency should not suffice to thwart his family's decisions as to what is best for him. Given that the government is apparently free to keep its indictment pending against Chaudhry for the remainder of his life, the government's argument would effectively mean that it could defeat those decisions for that entire duration. That is *not* what the Insanity Defense Reform Act of 1984 contemplated in authorizing the release of non-dangerous, incompetent defendants who have no reasonable likelihood of ever being restored to competency.

*Finally,* and purely out of an extreme abundance of caution, it should additionally be noted that there is an extradition treaty in force that the government could avail itself of in order to secure Chaudhry's forcible return in the unlikeliest of events that it should need an enforcement mechanism. *Cf. United States v. Khan*, 993 F.2d 1368, 1372 & n.1 (9th Cir. 1993) (relying on "operative extradition treaty between the United States and Pakistan"). As amply evidenced by Chaudhry's numerous trips to Pakistan since the inception of this case, there is no question but that will not be necessary.

## CONCLUSION

For all the foregoing reasons, and all those set out in his Request for Permission to Travel, this Court should grant that Request.

Dated: May 24, 2012          Respectfully submitted,

/s/ Gary K. Dubcoff
Gary K. Dubcoff

Counsel for Defendant
MOHAMMAD YOUSUF CHAUDHRY